UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT KOCHENDORFER, | ) |
| | ) CASE NO. C11-1162-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER GRANTING PLAINTIFF'S |
| METROPOLITAN PROPERTY & | ) MOTION FOR PARTIAL SUMMARY |
| CASUALTY INSURANCE COMPANY, | ) JUDGMENT |
| | ) |
| Defendant. | ) |
| _____ | ) |

INTRODUCTION

This matter involves an insurance contract dispute arising out of a fire in a Bellevue, Washington house owned by plaintiff Robert Kochendorfer and insured by defendant Metropolitan Property & Casualty Insurance Company (hereinafter "Metropolitan" or defendant). Individuals renting the house from plaintiff operated a marijuana grow operation and caused the fire through tampering with the electrical panel. As dictated by the policy of insurance, an appraisal panel met to set amounts of loss for property damage. Plaintiff sought judicial confirmation of the unanimous appraisal decision and the Court entered an order confirming the appraisal award. (Dkt. 19.)

Plaintiff now pursues partial summary judgment. (Dkt. 20.) He requests that the Court find, as a matter of law, that Metropolitan breached the policy of insurance by failing to pay "loss of rents," that he is entitled to the cost to comply with "code upgrade," meaning the ordinances and laws required by the City of Bellevue, and that he is entitled to the cost of clean-up and remediation related to the marijuana grow operation and fire. Defendants maintain the existence of genuine issues of material fact precluding summary judgment. Having considered the arguments raised in support and in opposition to the motion, along with the remainder of the record, the Court finds plaintiff entitled to partial summary judgment.[1]

## BACKGROUND

Tenants renting plaintiff's house "jumped" the electrical panel, tapping into power to operate and conceal a marijuana grow operation. (*See* Dkt. 16, Ex. A at 6-7.) The July 4, 2010 fire resulted from the electrical system tampering. (*Id*.; Dkt. 31, Ex. E.) The fire originated in the main electrical panel, located in the garage of the house, and spread to the surrounding wood studs and wood siding. (Dkt. 31, Ex. E.)

Plaintiff submitted a claim to Metropolitan pursuant to his policy of insurance. (*See* Dkt. 20-1.) Metropolitan issued an initial payment in the amount of $30,052.83 for the loss. (Dkt. 20-2.) Plaintiff submitted a proof of loss in the amount of $323,823.49. (Dkt. 20-3.) As dictated by the policy, the parties entered into an appraisal process to resolve the dispute as to amount of loss. (Dkt. 20-1 at 27.)

The appraisal panel rendered its decision on March 30, 2011, awarding plaintiff a total

---

[1] Defendant's argument that plaintiff lacks sufficient personal knowledge of the operative facts to even state causes of action (Dkt. 28 at 10-11) clearly lacks merit and does not warrant any substantive discussion. The Court also herein DENIES as insufficiently supported plaintiff's motion to strike the declaration of defendant's expert, Kevin Lewis, P.E. (*see* Dkt. 32 at 2 (seeking to strike Dkt. 30)).

ORDER GRANTING MOTION
PAGE -2

of $311,270.58 in replacement cost value and $240,077.05 in actual cash value (ACV).  (Dkt. 20-4.)  The award accounted for structure repairs, clean-up/remediation "per AMEC protocol", code upgrades, and temporary repairs.  (*Id*.)  The panel also subsequently issued an appraisal award for loss of use, accounting for a reconstruction period of four months upon receipt of the full ACV payment.  (Dkt. 20-5.)

On May 16, 2011, Metropolitan issued an ACV payment accounting for the structure and temporary repairs.  (Dkt. 20-6.)  The attached letter reflected that plaintiff had at that point received payment for $58,433.72 towards those costs and described payment of $128,326.76 to cover the remaining agreed ACV.  (*Id*.)  Metropolitan denied coverage for the code upgrades and clean/up remediation awards.  (*Id*.)  Also, Metropolitan has not issued a payment for loss of use.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of showing the district court an absence of evidence to support the nonmoving party's case.  *Celotex Corp.*, 477 U.S. at 325.  The burden then shifts to the nonmoving party to establish a genuine issue of material fact.  *Matsushita*

*Elec. Indus. Co.*, 475 U.S. at 585-87. The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

As a federal court sitting in diversity, the Court applies state law in this matter. *State Farm Fire & Casualty Co. v. Smith*, 907 F.2d 900, 902 (9th Cir. 1990). As stated in the Order confirming the appraisal award, pursuant to Washington law, "[t]he provisions of a fire insurance policy requiring an appraisal are universally held to be valid and enforceable[.]" *Goldstein v. Nat'l Fire Ins. Co.*, 106 Wash. 346, 353, 180 P. 409 (1919); *Keesling v. W. Fire Ins. Co.*, 10 Wn. App. 841, 845-46, 520 P.2d 622 (1974). "An appraisal provision provides a method for establishing the dollar value of damage sustained[,]" and "is justified in the expectation that it will provide a plain, inexpensive and speedy determination of the extent of the loss." *Keesling*, 10 Wn. App. at 845 (cited source omitted). An appraisal award is "conclusive as to the amount of loss[,]" and may be challenged only with respect to fairness of the appraisal process. *Bainter v. United Pac. Ins. Co.*, 50 Wn. App. 242, 246, 748 P.2d 260 (1988) (awards may be challenged only "where the fairness of the appraisal process is questioned . . . , through allegations of bias, prejudice, or lack of disinterestedness on the part of either an appraiser or the umpire[.]")

A.   <u>Loss of Use</u>

Plaintiff avers his entitlement to benefits for loss of use of his property pursuant to the policy provision providing for loss of use coverage. (Dkt. 20-1 at 11.) The appraisal panel set the loss of use value as "four (4) months upon receipt of full Actual Cash Value payment[,]" (Dkt. 20-5), and Metropolitan made what it determined to be the final ACV payment on May

16, 2011 (Dkt. 20-6). Plaintiff asserts that Metropolitan's failure to make any further payments for loss of use demonstrates a clear and unambiguous breach of the policy, warranting partial summary judgment on the issue of breach of contract.

Defendant concedes some loss of use payments may ultimately be due plaintiff, but contends the amount due is subject to a future determination on the scope of the applicable insurance coverage. Defendant posits the existence of several variables affecting the question of the amount, if any, due plaintiff for loss of use, pointing to the fact that the policy does not provide coverage for loss of use due to fungus or mold or due to cancellation of a lease or agreement, and allows for payment only "for the shortest time required to repair or replace the rented part." (Dkt. 20-1 at 11.) Defendant maintains disputes of material facts relating to these variables, including the question of when plaintiff's residence could have been repaired. (*See* Dkt. 29 (Decl. of David L. Dahlstrom), ¶¶7-9 (challenging need for clean-up/remediation performed); Dkt. 30 (Decl. of Kevin Lewis, P.E.), ¶¶ 6, 8 (challenging need for replacement of all electrical home runs in the residence); *see also* Dkt. 16, Ex. A (earlier Lewis Decl.).)

Defendant maintains plaintiff essentially seeks to equate the appraisal award to the existence of insurance coverage. It notes that the appraisal award by its own language states that it does not resolve any insurance coverage issues (Dkt. 20-4), and the recognition in the law that appraisal panels are not empowered to make such determinations, *see Mercer Int'l v. United States Fid. & Guar. Co.*, 938 F. Supp. 680, 683 (W.D. Wash. 1996) (appraisal would be "useless – where the controversy between insurer and insured is over terms in the contract."); *Jefferson Ins. Co. v. Superior Court of Alameda County*, 3 Cal. 3d 398, 403, 475 P.2d 880 (Cal. 1970) (recognizing that appraisers serve the function of determining amount of damage, not

resolving questions of coverage or interpreting policy provisions).

Whether or not mold growth resulted from the marijuana grow operation, it is undisputed neither mold, nor fungus was the precipitating factor for the loss of use of plaintiff's property. Nor did the loss of use stem from the cancellation of a lease or agreement. Accordingly, the only possibly relevant variable element identified by defendant is the question of the time necessary to complete the repairs to plaintiff's property. For the reasons described below, defendant's reliance on this element is unavailing.

Defendant does not deny the existence of coverage for some amount of loss of use. Instead, defendant challenges the amount as set forth by the appraisal panel – four months upon receipt of the ACV payment. However, while defendant remains dissatisfied with this award, "an appraisal occurred and an appraisal award is conclusive as to the amount of loss." *Pinney v. Am. Family Mut. Ins. Co.*, No. C11-175-MJP, 2012 U.S. Dist. LEXIS 22328 at *7 (W.D. Wash. Feb. 2, 2012) (citing *Goldstein*, 106 Wash. at 353). "It is inappropriate to undermine the appraisal process when it is the appraisers who have inspected the [property] and are best-equipped to evaluate the loss." *Id*. at *8.

Defendant fails to set forth any basis for challenging the fairness of the appraisal. *Bainter*, 50 Wn. App. at 246. Because defendants neither raise, nor support such a challenge, plaintiff is entitled to partial summary judgment on the four month loss of use value set by the appraisal panel. *Id*. at 247-48 ("The Bainters' remaining issue concerns whether the amount of the award for living expenses was adequate, under a clause of the policy providing for payment 'for the shortest time required to repair or replace the premises'. Their dispute with United Pacific concerns the umpire and appraiser's factual determination. Because no unfairness was

shown, this part of the award was also conclusive as to the amount of loss.")

B.      <u>Code Upgrade</u>

Plaintiff also avers his entitlement to the costs incurred for code upgrades pursuant to the policy provision allowing for coverage where a loss causes costs incurred through enforcement of an ordinance or law.  (Dkt. 20-1 at 48.)   The appraisal panel set the value for code upgrades performed by Paradise Construction at $50,959.48.   (Dkt. 20-4.)

In support of this claim, plaintiff relies on the declaration and deposition testimony of City of Bellevue electrical inspector Jan Borjeson.  Borjeson attests to issuing an Inspection Notice requiring the following electrical corrections to plaintiff's property for issuance of a permit:  "Replace panel & breakers and home runs damaged by fire."   (Dkt. 18, ¶5 and Ex. B.) In a deposition, Borjeson confirmed that his opinion both upon inspection and at the time of the deposition was that all of the "home runs" – the wires that run from the electrical panel to the first outlet or switch – in plaintiff's property had been damaged in the fire and needed to be replaced.  (Dkt. 20-8 at 8-9.)  Paradise Construction thereafter replaced all of the home runs. (*Id*. at 9.)

Plaintiff rejects any argument by defendant that the policy of insurance provides coverage only for the minimum repair which might meet the requirements of the code, pointing in support to the Washington Court of Appeals decision in *Commonwealth Ins. v. Grays Harbor Cty*., 120 Wn. App. 232, 84 P.3d 304 (2004).   In that case, the state court held that, in considering an insurance provision allowing for code upgrades, "the test is not what the building official reasonably believes the code allows him to do[,]" nor "what a lawyer or judge believes the code allows."  *Id*. at 240.   "Rather, the test is what a reasonable lay insurance

ORDER GRANTING MOTION
PAGE -7

purchaser would believe the code allows the city to enforce." *Id*. (citing *Starczewski v. Unigard Ins. Group*, 61 Wn. App. 267, 274, 810 P.2d 58 (1991) (holding that the average person would believe coverage for "the amount necessary to repair or replace the damaged property" includes the amount necessary to comply with mandatory building codes) (citing *Odessa Sch. Dist. 105 v. Ins. Co. of Am.*, 57 Wn. App. 893, 897, 791 P.2d 237 (1990))). Plaintiff notes that the City of Bellevue enforced the code to require replacement of the home runs, and argues an average person would believe the City official had the authority to enforce the code as such.

Defendant maintains replacement of the home runs was not necessary, either practically or as a code requirement, and that this factual dispute precludes summary judgment. Defendant denies that the holding of *Commonwealth Ins*. applies to the facts of this case and avers that plaintiff selectively quotes from Borjeson's deposition. Defendant describes Borjeson as also testifying he agreed with Kevin Lewis, Metropolitan's own engineer, that installation of a junction box would have been acceptable under the code had a "Megger test" been performed. (Dkt. 20-8 at 7-8; *see also* Dkt. 16, ¶5 & Ex. A (Lewis concluded replacement of home runs was unnecessary and that installation of an interposing junction box, with a Megger test, would be code complaint).) It notes an absence of any evidence plaintiff's contractors performed a Megger test before replacing all of the electrical home runs. (Dkt. 31, ¶¶15-18.)

Defendant argues that the trier of fact may conclude plaintiff's contractors held off on performing a Megger test in order to increase the scope of repair. It suggests as an additional question for the trier of fact whether plaintiff's reliance on the advice of his contractors was

reasonable. Finally, pointing to various provisions in the policy, defendant posits that replacement of all of the home runs is clearly outside the scope of repair. (*See* Dkt. 20-1 at 6 and 23 (defining "Actual cash value" as "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence."; stating at Section 1. A. that Metropolitan "will pay the actual cash value at the time of the loss . . . , but no more than the lesser of: (i.) the amount required to repair or replace the damaged property of like kind and quality; or (ii.) the limit of liability applying to the property."; and stating at Section 1. B. that if "at the time of loss the amount of insurance applicable is determined to be 80% or more of the full current replacement cost, [Metropolitan] will pay the full cost of repair or replacement, subject to the applicable deductible, without deduction for depreciation" except that liability "will not exceed the smallest of: a. the limit of liability applicable to the building; b. the cost to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use; or c. the amount actually and necessarily spent to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use."))

The Court first notes that defendant fails to provide any support for or analysis regarding the conclusion that replacement of the home runs was "clearly" outside the scope of repair as allowed for under the policy. (*See* Dkt. 28 at 14.) This assertion, with a mere reference back to previously quoted policy provisions, is no more than conclusory. (*Id*.)

Nor does defendant explain why it believes the holding of *Commonwealth Ins.* does not apply to the facts of this case, or persuasively undercut plaintiff's reliance on the evidence from

ORDER GRANTING MOTION
PAGE -9

Borjeson. Borjeson's declaration and the Inspection Notice he issued plainly supports the conclusion that he called for the replacement of the home runs. (Dkt. 18, ¶5 and Ex. B.) While Borjeson did agree, during his deposition, that the installation of a junction box would have satisfied the code, he conditioned this response on his having had possession of a Megger test showing the conductors in the house were sound, and with the assumption that the panel and breakers were also to be replaced. (Dkt. 20-8 at 7-8.) In any event, Borjeson unequivocally confirmed his opinion that all of the home runs in the house needed to be replaced and that he required replacement of the home runs for issuance of the permit. (Dkt. 20-8 at 8-10 ("Q[.]  Was the replacement of all of the home runs required under the permits[]? A[.]  Yes.").) It can be said, under these circumstances, a reasonable lay insurance purchaser would believe that the local code allowed for Borjeson to require replacement of the home runs. *Commonwealth Ins.*, 120 Wn. App. at 240. As such, neither the question of whether plaintiff's contractors held off on performing a Megger test, nor whether plaintiff reasonably relied on his contractors is relevant.

As argued by plaintiff in his reply, defendant's arguments challenge the measure of loss, rather than issues of coverage. Defendant concedes some level of repair was required for code upgrade, but avers a lesser amount is owing than the value set by the appraisal panel; an amount that would have accounted for the installation of a junction box had a Megger test been conducted and allowed for such an alternative. (*See* Dkt. 16, Ex. A & Dkt. 30.) However, defendant's challenge to the appraisal award fails in the absence of some showing of unfairness in the appraisal process. *See*, *e.g.*, *Brooks Family Partnership v. Granite State Ins. Co.*, No. C09-5723-RJB, slip op. at 10-13 (W.D. Wash. Nov. 22, 2010) (rejecting a plaintiff's challenge

ORDER GRANTING MOTION
PAGE -10

to an appraisal award of zero dollars for code compliance given the absence of any showing the appraisal award was unfair; confirming the award and dismissing plaintiff's claims for amounts due under the policy). For this reason, and for the reasons stated above, the Court also finds plaintiff entitled to summary judgment in relation to the code upgrade.

C.        Clean-up Costs/Remediation

Plaintiff avers his entitlement to the appraisal panel award of $53,316.57 for costs incurred for compliance with environmental cleanup protocol. (Dkt. 20-4.) He argues well-established controlling Washington authority supports his claim pursuant to the efficient proximate cause rule. That rule holds that, "where an insured peril 'sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought' that peril is the 'proximate cause' of the loss." *Bowers v. Farmers Ins. Exch.*, 99 Wn. App. 41, 47, 991 P.2d 734 (2000) (quoting *Graham v. Public Employees Mut. Ins. Co.*, 98 Wn.2d 533, 538, 656 P.2d 1077 (1983)). Plaintiff argues that, here, because tenant vandalism is a covered cause of loss under the policy, and because the vandalism of the property was the efficient proximate cause of the loss, he is entitled to the cost of clean-up and remediation associated with the marijuana grow operation and fire. *See*, *e.g.*, *id*. at 42-48 (insurer found liable for damage resulting from marijuana cultivation by tenants, including clean-up costs associated with mold growth, where there could be no reasonable difference of opinion that the tenants' vandalism was the efficient proximate cause of the loss) and *Graff v. Allstate Ins. Co.*, 113 Wn. App. 799, 800-06, 54 P.3d 1266 (2002) (insurer liable for clean-up costs of methamphetamine residue where the vandalism of operating a methamphetamine laboratory by tenants, a covered peril, preceded the contamination, an

ORDER GRANTING MOTION
PAGE -11

excluded peril).

Defendant maintains marijuana remediation was not necessary and that the evidence it proffers in support of this argument, including that attesting to an absence of scientific evidence showing mold, pesticide, or fertilizer residue, presents factual disputes precluding summary judgment. (*See*, *e.g.*, Dkt. 29, ¶¶7-9 (Dahlstrom, an industrial hygienist hired by Metropolitan, attests that clean-up and remediation of marijuana grow areas is not based on the presence of residuals on surfaces, and notes the absence of any testing results showing chemical or mold contamination in the property).) Defendant posits that the trier of fact may conclude plaintiff's contractors had no basis for performing a remediation protocol and improperly acted to increase the scope of repair. It maintains that remediation of residue that did not actually exist is clearly outside the scope of repair, pointing to the same policy provisions outlined above.

Again, however, without presenting an argument as to the fairness of the appraisal process, defendant presents a challenge to the amount of clean-up costs to which plaintiff is entitled, rather than presenting an argument as to coverage. Defendant does not contend that no clean-up/remediation was required, such as, for example, that associated with soot and odor removal. (*See* Dkt. 31, Ex. D (remediation protocol describing found conditions to include visible mold growth, drip marks or residues of chemicals observed in air supply ducts and carpets in second floor hall bathroom, master bedroom, and other rooms, mild odors throughout the home, and detectable Tetrahydrocannabinol (THC) residues on interior of furnace, in settled dusts, a window sill and several objects associated with marijuana grow operation; noting elsewhere visible soot on exposed surfaces).) Also, as asserted by plaintiff, while relying on an absence of a chemical or microbial analysis, defendant's own expert appears to recognize

01 that marijuana residue contamination may have been required in at least some parts of the
02 house, such as within the master bedroom and bath areas on the second floor and the attic space
03 above.  (Dkt. 29, ¶¶ 7-9 ("[A]any contamination that may result from the mixing or use of the[]
04 pesticides and fertilizers [typically associated with marijuana grow operations] are generally
05 localized to bathroom sinks or tubs and are not pervasive throughout grow rooms."; conceding
06 that documents "do suggest that some samples (tape lifts for mold and wipe samples for surface
07 soot and THC) may have been planned for and/or collected[]"; and concluding:  "The fact that
08 the eastern portion of Plaintiff's residence (from the kitchen to the perimeter wall on the first
09 floor, the stairway leading up to the second floor bedrooms and bathrooms, *with the exception*
10 *of the master bedroom and bath areas on the second floor, and the attic space above the second*
11 *floor*) was completely gutted of insulation, carpeting, and gypsum wallboard is not supportable
12 and is uncalled for.") (emphasis added).)

13      Nor does defendant's discussion of relevant case law support its contentions.  That is,
14 while the methamphetamine contamination at issue in *Graff*, 113 Wn. App. at 806, may well be
15 distinguishable from that associated with marijuana, defendant fails to acknowledge either the
16 recognition of the damage associated with marijuana grow operations as discussed in *Bowers*,
17 99 Wn. App. at 42 ("The marijuana cultivation caused damage to the house, including mold
18 growth throughout the house."), or in any respect challenge plaintiff's assertion that the tenant
19 vandalism at issue in this case can be deemed the efficient proximate cause of the loss.  At
20 most, defendant points to the unhelpful case of the Washington Court of Appeals in *Findlay v.*
21 *United Pacific Ins. Co.*, 129 Wn.2d 368, 917 P.2d 116 (1996).  In that case, the state court
22 found no insurance coverage where the parties agreed that the efficient proximate cause of the

loss was weather conditions and the policy unambiguously stated that losses caused by weather conditions were not insured. *Id*. at 376-77. Here, in contrast, defendant does not identify an unambiguously excluded peril causing the loss and precluding coverage. Indeed, defendant presents no argument whatsoever that clean-up/remediation due to tenant vandalism is not a covered event under the policy. For this reason, and for the reasons stated above, the Court concludes that plaintiff establishes his entitlement to partial summary judgment on the issue of clean-up costs/remediation.

## CONCLUSION

In sum, the Court finds plaintiff entitled to an award of partial summary judgment in relation to the issues of loss of rents, code upgrade, and clean-up costs/remediation under the insurance policy. Plaintiff's motion for partial summary judgment (Dkt. 20) is, accordingly, GRANTED. The Clerk is directed to send a copy of this Order to the parties.

DATED this 11th day of April, 2012.

Mary Alice Theiler
United States Magistrate Judge